May it please the Court, Walter K. Pyle on behalf of Humberto Diaz. Strickland v. Washington says that whether counsel gives effective or ineffective assistance is judged on a standard of reasonableness. A reviewing court judges the reasonableness of counsel's conduct. Mr. Diaz says that his attorney was not reasonable in the context of the evidence. And in this case, the context of the evidence is everything. In closing argument, counsel said that Mr. Diaz he he counsel described a confrontation between these young men. And this all turns on the go get the gun statement. So let me lay out what my concern is for you and see if you can help me. Yes. There is a witness that says that Mr. Diaz said that. Yes. Durell Hicks. Right. There's another witness who says somebody said it, but I can't identify who. Durell's brother, Tomiko. Right. And then there is a third witness who says that after this happened, somebody went and got a gun. Yes. Well, yes, no, no. All those witnesses subject to discrediting and other stuff. Yes. But why, given that and the fact that your client didn't testify, why isn't it why was it incompetent for counsel to say, well, I guess I better embrace that statement and try to explain it away rather than attempt to persuade the jury that the statement was never made? Because the two people you mentioned, Durell and Tomiko, Durell said, I heard Mr. Diaz say, go get a gun, and his brother said, I heard somebody go get a gun. These were both, they both testified this was when we first drove up. No, I understand that their recollection was subject to cross-examination and perhaps impeachment and, but counsel is there and makes the decision that the statement and try to explain it away as your client's trying to scare them away in effect. Right. Well, it wasn't, when they said it, everybody agrees they both said it when they first drove up. There was no conflict on that. He said, Durell said consistently, I was by the car. Tomiko was standing by the car. Well, but other witnesses say people came out of the car in a threatening or aggressive fashion. So. Yes. But look, let me, let me start by saying if I were looking at this as a trial judge at the time or as a state habeas judge, I might well find that it was an unreasonable decision. The question is, given our double deference, why isn't just the hint of a strategy enough? Because there's no, because the strategy doesn't fit with the evidence. There was no evidence, no witness testified that Diaz said, go get a gun after he had been confronted by Tomiko. Tomiko himself says, I stayed back by the car. Durell says, initially, Tomiko was by the car. But why, I guess I'm not understanding why that matters, so that if there's evidence and there is evidence that Diaz said, get the gun, and then two of the men who were standing with him left and came back with the gun and shot the three people getting into the car. I'm not sure, I know you made some effort to suggest that the timing was different than what had been presented at court, but I'm not sure why that made a difference. Because the timing, her excuse was Diaz had been confronted. He was afraid. The statements, Diaz said, go get a gun, would be wrong before that. Well, that was her rationale to the jury, right? So there was testimony that Diaz had said, get the gun, and the government's jury, as I understand, was at that set in motion, what ended up with a confrontation. And so the state habeas court, I think, says, well, in trying to justify this, perhaps the lawyer at trial could say this evidence is credible. And her response was, let me try to come up with a rationalization or an excuse for it that might be persuasive to the jury. As Judge Hewitt says, we're actually one step removed from the question of whether there was ineffective assistance of counsel, right? We have to say that the State court was objectively unreasonable. It was. In saying that the counsel could have had a strategy. Two reasons. Number one, to say he said that in response to being confronted by Tomiko, she would have had to put it in a context where he said that as they first drove up. She put it in the context that they had jumped out of the car, they had confronted him, Tomiko says, who's messing with my brother, Diaz was afraid, so he said, go get the gun. But that didn't fit with the evidence. Nobody testified that happened. Isn't it worse for Mr. Diaz if he said it when they first get out of the car? Well, there was evidence. Because then it looks like it's, I'm encouraging you to confront these people with a gun for no reason, where at least if she makes it later, it sounds like it's a reaction to a crisis. But remember the context here. When Durell first was interviewed by the police, he said, we were going to pull up, but then my brother said, somebody is going to go get a gun. That's what he told the detective. And then his brother, Tomiko, says, yeah, when we pulled up, I was putting it in the car, and I heard somebody say, go get a gun. And it was only after the police officer said, went through, went through, you know, what happened next, you saw the guy at the door. Well, but I'm focusing on the testimony at trial. So there wasn't any testimony at trial to that effect, was there? Yes, the recorded statement was played, and the jury asked him. I think the jury asked him to hear it again during deliberations. So can I ask a question that's probably not implicated by this case? Were there lesser included offenses charged? It was not. They were not. So the jury. That's my recollection. Yeah. The jury's only. I think voluntary manslaughter was, but the jury said it didn't fit. The jury's only real choice was the aiding and abetting charge on the. Right. Okay. Yes. Counsel, is your position that if the client tells the lawyer, do not argue this point, that the Constitution requires counsel to follow the instruction of his client? There is no – there is not yet a Supreme Court case that says that. My understanding is it's recently been granted cert on that particular issue. Right. I know what cases are pending. What's your position as it relates to this case? Well, Strickland does say that the – one of the duties of counsel is to consult with his – one of the duties of counsel is to consult with his client on important matters. I submit that Strickland would support the idea that if he says – and she says in point number 10 of her points on appeal, when she filed a notice of appeal, she said he said he didn't – he denied he made that statement to me. He denied to me he made that statement. So what would effective representation have been with respect to this statement? Point out that when he – that when Durell originally told the police what happened, he said, my brother said this. His brother confirms, I said, I heard somebody – I heard somebody go get a gun. The police officer, through suggestive interrogation, then said, wasn't – didn't the guy you were talking to in the middle of the street say that? And he says, yes. And you have inconsistent statements from the person who actually says he heard Diaz say it in terms of timing? Yes. I'm running out of time. Any more questions? You can save the remainder for rebuttal. Thank you. We'll hear from the government. May it please the Court, I'm Deputy Attorney General Max Feinstadt. I represent the warden. In this case, the situation was Petitioner standing on a dark street corner with several of his fellow gang members when a car pulls up, five men jump out. At least three of these men aggressively approached Petitioner, and according to several witnesses, one of them said, I hear you've been messing with my brother. Now, at this point, Petitioner said, go get a gun. And his co-defendant did just that, got a gun, came back, shot at the victims. So when counsel says in closing, yes, my client says that, hasn't she in effect stipulated to his guilt? No, Your Honor. She gave an innocent explanation for that statement. She argued that when Petitioner said, go get a gun, he was saying it out of fear. He was saying it to back off these men who were aggressively approaching him. If she – but for that statement, I mean, the thing that concerned me was that statement didn't seem to be the only basis for liability for Mr. Diaz. Was there any other evidence of that for which he could have been found liable as an aider and a better, or was it solely that statement? It was primarily that statement, Your Honor. There were three different witnesses who discussed some version of that statement. Right. But aside – I'm interested in your answer to the question. Aside from the evidence that he said, go get a gun, is there any evidence that Mr. Diaz aided and abetted these homicides, these attempted homicides? No, Your Honor. Besides him turning to the man who went across the street? So the only evidence that he – of his guilt is the statement, go get a gun. And counsel has an alternative way to attack that, which is that there's evidence in the record that somebody else said it and that the people who testified are at least impeachable, and yet she decides to admit that he said it and try to explain it away. That's what happened here, right? There is no evidence in the record that somebody else said it. Well, isn't – what about the recorded statements? He says, I didn't say it. That's in the record. I'm sorry, Your Honor. Who says I didn't say it? Mr. Diaz. Oh, Mr. Diaz. Yeah. So there's an alternative way to do it. He says I didn't say it. Somebody else must have said it. Why isn't that the competent way to represent this? Now, I understand we're stuck with EDPA double deference, and you may prevail in this case eventually anyway, but just in terms of common sense, rather than admit the only fact that makes him liable, why not try to make – and he denies making the statement – why not try an alternative approach? Well, Your Honor, that would depend on counsel's analysis of how credible the witnesses who said Petitioner said he had a gun were at trial. What counsel says, and we can't use her declaration necessarily, is I didn't think about it at all. That was just a dumb mistake on my part, as opposed to a smart mistake. That is what counsel said after trial, but her closing argument itself, that tells a different story. She marshaled all the evidence that Petitioner was in fear, that these men appeared to be armed, that they were coming at him aggressively, and her closing argument gave the jury not only the opportunity to find Petitioner not guilty based on no intent, but also to find that he acted in self-defense or that he acted in imperfect self-defense. And if she had said simply, this statement didn't happen, he never said this, then if the jury looks at her and says, no, we don't buy that, we think that these three witnesses were credible, then they're not going to go with the rest of her closing argument, they don't have imperfect self-defense or self-defense, they just find Petitioner guilty. So her strategy did come with a certain amount of risk, but at the end of the day, it was reasonable. And it was definitely reasonable for at least a reasonable jurist could agree that someone could find trial counsel's statement was reasonable. I know we can't deal with it, but as I indicated to your colleague, I find the charging of this case of Diaz slightly troublesome. I mean, he's plainly not the main actor in this thing. The only evidence is that he said one thing, and he now ends up with a 68-year-to-life sentence. I mention it, but I can't do anything about it. I just mention it for your edification. It's not a question, so go on. Do you want to address, opposing counsel was talking about the timing of the closing argument didn't make sense. Can you address that? Yes. Petitioner's argument is that trial counsel had to follow Doral's timeline. And Doral said, I heard Petitioner say get a gun when I was standing next to the car as soon as I got out of the car. But both Doral and Harrison downplayed their involvement in the situation. They downplayed how aggressively they approached Petitioner that they were coming up to him in a confrontational matter. Durati, on the other hand, said, my brother's jumped right out of the car, and Watson, the guy who was shot in the head. And they went right up to Petitioner. They got in a semicircle around him. And Harrison said, I hear you've been messing with my brother. So trial counsel should take the most advantageous timeline in closing arguments. She doesn't have to argue that these guys weren't aggressive, that they just got jumped out and kind of loitered by the car. The problem is that the State's timeline is different than Doral's, right? The State's argument is that this occurs, they come out and confront him, and they go get the gun. So if you use the State's theory, Doral is not believable. Well, some parts of Doral's testimony are more believable than others. The fact that Doral would try to downplay his own involvement, I mean, that's something that has a clear motive behind it, because he doesn't want to be seen as the aggressor. However, he was obviously afraid when he was giving this testimony. He was a very reluctant witness. It doesn't seem like he would put Petitioner in this situation, particularly when he said that afterwards he recognized Petitioner. He shook his hand. His credibility as to the statement, I heard Petitioner say, get a gun, stands. I think it's very believable, and particularly given the fact that it's corroborated by the other witnesses, by Harrison and by Durati. If he says go get a gun in jest, not in jest, but not intending that somebody go get one, and somebody goes and gets one, is he guilty of aiding and abetting? If he said it in jest, he has no intent, Your Honor. He had no intent for somebody to follow him. So it would have been, in your view, if he said, not in jest, but, you know, to frighten somebody off. If he said it to frighten somebody off, but somebody else reasonably acted on it and went and got a gun, that would not, that would be a defense in your view? That would be a defense. Or if he said it out of reasonable fear, that could be self-defense. The timing also, getting back to your question, Judge Acuda, the timing doesn't necessarily matter. I mean, this happened very quickly. These guys got out of the car and they ran up, and whether Petitioner said go get a gun before Harrison said, I hear you've been messing with my brother, or as they were running up, the force of her argument that as soon as these guys approached, Petitioner was afraid, still holds. And regardless of which exact timeline you adopt, the same theory that Petitioner said this out of fear would still apply. If there are no more questions, we would submit that the judgment of the lower court should be affirmed. Thank you. Thank you. Thank you. In response to counsel's argument, timing does matter. Nobody said that Mr. Diaz said go get a gun as these guys were running up. The only testimony, two people heard somebody say go get a gun, and that was as the car was driving up. Tomiko says it was as I was putting the car in park. So timing does matter. He can't be in fear if they haven't confronted him yet. They just drive up. Second, I want to point out, we can use counsel's declaration in this case because this was decided under California rules of court, which assumes all the facts alleged in his petition were true. No, we can assume counsel's declaration is true, but is it relevant? Yes. It's you can see she even in her letter, she still seems to think. Right. I guess my question is let's assume counsel didn't really have a strategy. But if we look at it objectively, it would be a not unreasonable strategy. It really doesn't matter what was in her mind, does it? It probably does not. But it does matter if her excuse doesn't fit with the facts, and it doesn't. She brought out on cross-examination that Takemo heard this statement before the confrontation. Excuse me. She brought out in the cross-examination of Durell. He says this was after Takemo had confronted the man. That's consistent with her final argument. But he says, no, it was before. And she said, did you say before? It was before. And you remember that, sir? Yes. Are you sure? Yes. So her whole cross-examination brought out that this didn't happen in the middle of the street. The only time, and both these, both Durell and Tameko are consistent that anything said, somebody said about going again and again, was as they drove up. Thank you. Okay. The case of D.S. v. Lewis is submitted.
judges: Ikuta, Hurwitz, Molloy